UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DONTE CURRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-cv-00190-JMS-MG |
| ) | |
| NORTON Sgt., ) | |
| LAWSON Sgt., ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, Plaintiff Donte Curry alleges that two correctional officers at Putnamville Correctional Facility used excessive force by grabbing and twisting his arms before placing him in too-tight handcuffs for nearly an hour.

Defendants have moved for summary judgment, in part based on the affirmative defense of qualified immunity. Dkt. 34. But disputes of material fact preclude a grant of summary judgment, whether on the underlying claim or on grounds of qualified immunity. Defendants' motion is therefore **DENIED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because

1

those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Curry and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

Mr. Curry was at all relevant times an Indiana Department of Correction ("IDOC") inmate housed at Putnamville. Defendants Norton and Lawson were sergeants. Dkt. 35-2 at 8 (Curry Dep.); dkt. 35-1 at ¶ 3 (Norton Aff.).

On July 18, 2020, Mr. Curry was watching television in the dayroom with between 20 and 30 other inmates when Sergeant Norton approached him and accused him of wearing an altered t-shirt. Dkt. 35-2 at 7, 13. Mr. Curry told him that the t-shirt wasn't altered, but rather the shirt he had been provided was a size too small, and prison authorities refused to provide him one in his

size. *Id.* at 8, 14-15. Sgt. Norton became argumentative and began to use profanity as he again told Mr. Curry that he was in possession of an altered shirt. *Id.* at 8. Sgt. Norton told Mr. Curry to pack up his belongings because he was going to be taken to segregation. *Id.*

Mr. Curry began to pack up his property. *Id.* Sgt. Norton and Sgt. Lawson approached him and told him to place his hands behind his back to be restrained. *Id.* Mr. Curry complied, and, as he did so, he told the officers that he had a previous injury and asked them to not handcuff him aggressively. *Id.* at 8-9. Despite that, the sergeants roughly grabbed and yanked his arms in "a real aggressive way that made [his] arms and stuff hurt[.]" *Id.* at 9, 20. When Mr. Curry complained that they were aggravating his previous injuries, they responded, "Shut up. We can do what we want." *Id.* at 20. Mr. Curry did not raise his voice or threaten them in any way to justify the way in which they handcuffed him, which was "tight, deep in [his] wrists." *Id.* at 9, 19. Mr. Curry testified that he had never been handcuffed at Putnamville, and that inmates were normally only cuffed for transports if they were acting in an aggressive or threatening manner, which he was not. *Id.* at 19. Mr. Curry didn't know why he was placed in handcuffs. *Id.* at 22. Sgt. Norton attested that he handcuffed Mr. Curry and escorted him to the medical department consistent with prion policy for disobeying an order. Dkt. 35-1 at ¶¶ 8-9.

The officers began to escort Mr. Curry to the medical department. *Id.* at 9. During this escort, Sgt. Norton told Mr. Curry that he "want[ed] to make [Mr. Curry's] life a living hell" and that he could because he was a sergeant. *Id.* at 9. Mr. Curry asked the officers multiple times during the transport to loosen his handcuffs because they were too tight, but they refused. *Id.* at 9-10. Mr. Curry testified that officers are supposed to place a double lock on the handcuffs so that they could not further tighten, but the officers failed to do so, and the cuffs tightened with each movement he made. *Id.* at 28, 31.

3

Mr. Curry wanted to be seen by medical because his wrists and arms were numb. *Id.* at 24. Upon his arrival to the medical department, Sgt. Norton left, and Mr. Curry was examined by the nurse. *Id.* at 10, 24. The nurse checked the cuffs and tried to put two fingers through the cuffs, but they were too tight. *Id.* at 10. She also felt that Mr. Curry's hands were cold from the circulation being cut off. *Id.* at 33. The nurse told Sgt. Lawson that the handcuffs were too tight, and that Mr. Curry should be uncuffed.[1] *Id.*

Mr. Curry asked the nurse to take pictures of his wrists, and Sgt. Lawson told her that she could not take pictures. *Id.* Mr. Curry was handcuffed for nearly an hour when a captain called and asked about his status. *Id.* at 11, 30. When the captain learned that Mr. Curry was still handcuffed at the medical unit, she told Sgt. Lawson to uncuff him and send him back to his dorm. *Id.* at 11. Sgt. Lawson complied, and Mr. Curry was never written up for his supposedly altered t-shirt. *Id.*

Mr. Curry had bruising and red marks on his wrists for about two months. *Id.* at 33. He also had numbness in his left hand and arm that persisted after the incident. *Id.* at 33, 35. Mr. Curry had a pinched nerve in his neck and old shoulder injuries from previous incidents, so he was not sure if some of his pain was attributable to the old injuries. *Id.* at 20-21, 33.

### III.
### Discussion

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the

---

[1] The medical record from the encounter contradicts Mr. Curry's version. Dkt. 35-3. In her notes, the nurse recorded, "No injuries were reported or seen. . . . His cuffs allowed for adequate circulated and finger breadth and the ofd was told to adjust his positioning to alleviate his wrist pain." *Id.* at 2. At the summary judgment stage, the Court must construe the facts in Mr. Curry's favor.

4

force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

As to the first factor, there is a dispute as to whether *any* force was needed. According to Mr. Curry, not only did he not wear an altered shirt, but he never raised his voice or acted aggressively when Sgt. Norton told him to cuff up. This factor favors Mr. Curry. *See Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) ("[T]he infliction of pain is *per se* malicious if it is done totally without penological justification.") (cleaned up). Similarly, the second and fourth factor favors Mr. Curry because a jury could reasonably find that more force was used than needed, and that the threat to the officers and other inmates in the area was minimal or non-existent.

There is also a dispute of material fact with respect to the injury Mr. Curry suffered. Defendants argue that it is not clear that Mr. Curry's ongoing symptoms resulted from this incident as opposed to other injuries he had sustained before. But Mr. Curry stated that he has experienced numbness in his arms and wrists since the handcuffing incident. This dispute of fact must be resolved by a jury.

5

Because of these disputes, the Court must determine if Defendants are entitled to qualified immunity. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)). To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up).

It was clearly established in July 2020 that officers could not use handcuffs to inflict "prolonged, unnecessary pain on a prisoner." *Ajala v. Tom*, 658 F. App'x 805, 806−07 (7th Cir. 2016); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *Payne v. Pauley*, 337 F.3d 767, 780-81 (7th Cir. 2003). Defendants argue that they are entitled to qualified immunity because of the similarities between this case and *Tibbs*, in which the Seventh Circuit concluded that placing

6

an arrestee in tight handcuffs for about 25 to 30 minutes would not put an officer on notice that he was violating the arrestee's due process rights under the Fourteenth Amendment because "Tibbs complained only once to Officer Kooistra, gave the officers no indication of the degree of his pain, experienced minimal (if any) injury, and sought no medical care." *Tibbs*, 469 F.3d at 666. The Court also observed that in other excessive force cases, the plaintiffs complained of other injuries, including a cracked tooth, being kneed in the back, and being dragged down the hallway. *Id.*

Here, though, disputes of material fact preclude a finding of qualified immunity. Unlike the plaintiff in *Tibbs*, Mr. Curry had other injuries besides slight "discomfort"—he repeatedly told the officers that he had old injuries that could be aggravated, and Mr. Curry asserts Defendants yanked on Mr. Curry's arms despite his protests about these old injuries—an allegation Defendants do not acknowledge in their summary judgment briefing. Mr. Curry asked to be seen by medical, and he also testified that he suffered from discomfort and numbness in his arms and wrists for months after the incident. And, again, while Defendants argue that the handcuffing was appropriate due to Mr. Curry disobeying an order, there is a dispute as to that factor as well. *See Ferguson v. McDonough*, 13 F.4th 574, 580 (7th Cir. 2021) (noting qualified immunity is inappropriate at the summary judgement stage where factual disputes exist). Due to these factual disputes, Defendants are not entitled to qualified immunity at this stage, and the motion for summary judgment must be **denied**.

### IV.
### Motion to Strike

Mr. Curry filed a surreply, and Defendants moved to strike it on the basis that it did not comply with Local Rule 56-1(d), which provides that a surreply is only permitted if "the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." S.D. Ind. L.R. 56-1(d). Defendants argued that their reply did not object to Mr. Curry's evidence

7

or cite new evidence, and that the surreply merely rehashes arguments that were previously made. The Court agrees; the motion to strike, dkt. [68], is **GRANTED**. The surreply, dkt. [67], is stricken from the record.

## V.
## Conclusion

For these reasons, Defendants' motion for summary judgment, dkt. [34], is **DENIED**.

Defendants' motion to strike, dkt. [68], is **GRANTED**, and the surreply is stricken from the record.

The Court reconsiders its previous denial of Mr. Curry's request for counsel, *see* dkt. 42, and will try to recruit counsel for Mr. Curry for the rest of this action. Once recruited counsel has appeared, the magistrate judge is requested to hold a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date: 8/14/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

DONTE CURRY
953666
Allen County Jail
417 S. Calhoun St.
Inmate Mail/Parcels
Fort Wayne, IN 46802

All Electronically Registered Counsel

Magistrate Judge Mario Garcia